In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Russell GOLDSTEIN, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant-Respondent,

v.

Russell GOLDSTEIN, Respondent-Appellant.

Supreme Court

*No. 03–0523–D. Submitted on briefs April 29, 2004.—Decided June 30, 2004.*

2004 WI 87

(Also reported in 681 N.W.2d 891.)

For the respondent-appellant there was a brief by *Harvey Jay Goldstein* and *Harvey Jay Goldstein, S.C.,* Milwaukee.

For the complainant-respondent there was a brief by *Robert G. Krohn* and *Roethe, Krohn, Pope, McCarthy, Haas & Robinson, LLP, Edgerton.*

¶ 1. PER CURIAM.   Attorney Russell Goldstein appeals from a referee's report recommending that his license to practice law in Wisconsin be suspended for a period of four months, for violations of supreme court rules governing diligence, lawyer-client communications, and fee arrangements in six separate client matters. We adopt the referee's findings and conclusions and agree that a four-month suspension is appropriate discipline given the facts of this case.

¶ 2.   Attorney Goldstein was admitted to practice in Wisconsin in 1951. He is primarily a solo practitioner in the Milwaukee area. In 2000 he received a private reprimand for violating SCR 20:1.3 (diligence) and SCR 20:1.4(a) (failure to promptly respond to a client). He has no other disciplinary history.

¶ 3.   On February 26, 2003, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney Goldstein, alleging some twelve counts of attorney misconduct committed in connection with six client matters. Attorney Goldstein was charged with violating

519

SCR 20:1.3[1] (diligence) (three charges), SCR 20:1.4(a)[2] and (b)[3] (communication) (seven charges), and SCR 20:1.5[4] (fees) (two charges). A one-day hearing was conducted on August 12, 2003. Referee James J. Winiarski filed the report and recommendation on December 22, 2003, and this appeal followed.

¶ 4. On appeal, Attorney Goldstein does not challenge the referee's factual findings, per se. Rather, he challenges the referee's conclusion that the facts found rise to the level of violations of the respective supreme court rules. For simplicity, each client matter will be discussed seriatim.

## MATTER OF J.V.

¶ 5. The complaint alleged and the referee found that J.V. retained Attorney Goldstein in 1995 to represent him in a divorce proceeding. The case proceeded to trial in the Milwaukee County Circuit Court, and the trial court denied any maintenance to J.V.'s former spouse and also provided that her pension was to be shared with J.V. She appealed.

¶ 6. Attorney Goldstein did not advise J.V. of the appeal for some three months. Attorney Goldstein

---

[1] SCR 20:1.3 (Diligence) provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[2] SCR 20:1.4(a) provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] SCR 20:1.4(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[4] SCR 20:1.5(b) provides: "When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

eventually sent a letter to J.V. advising him of the appeal, and indicating that J.V. still owed him a substantial amount of money for legal fees incurred in the underlying proceeding. He asked J.V. to immediately pay him $500.

¶ 7. Attorney Goldstein later sent some additional correspondence to J.V., indicating he had received an appellate brief from opposing counsel and that it was necessary to file a responsive brief. This letter asked for legal fees in the amount of $1500 to file a responsive brief, and indicated that Attorney Goldstein would do nothing until arrangements were made for payment of old fees, plus new fees necessary to cover the cost of an appeal.

¶ 8. On March 14, 2000, the court of appeals issued an order directing J.V. to file his appellate brief within five days. On or about March 16, 2000, Attorney Goldstein sent another letter to J.V., again advising J.V. that unless arrangements were made with respect to past-due and prospective fees, Attorney Goldstein would do nothing further for J.V. On April 4, 2000, the court of appeals issued an order providing that, unless a brief was filed within ten days, the trial court judgment would be summarily reversed.

¶ 9. Attorney Goldstein did not file a brief on behalf of J.V. in the court of appeals. On December 5, 2000, the court of appeals summarily reversed the original divorce judgment.[5]

¶ 10. The referee found that Attorney Goldstein's only communications with J.V. during the course of the appeal were the three letters mentioned above. He found further that Attorney Goldstein never provided

---

[5] After the divorce judgment was summarily reversed, Goldstein represented J.V. in the trial court.

J.V. with copies of any of the notices or orders received from the court of appeals. The referee also found that Attorney Goldstein did not move to withdraw from the circuit court case, and did not advise the court of appeals that he was not representing J.V. on appeal. The referee found further that Attorney Goldstein did not clearly explain to J.V. the consequences of failing to timely file a responsive brief in the court of appeals.

¶ 11. The referee thus concluded that Attorney Goldstein failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3. In addition, by failing to advise his client of the orders issued by the court of appeals, and by failing to advise him of the consequences of not filing a brief in the court of appeals, the referee concluded that Attorney Goldstein failed to keep his client reasonably informed of the status of the matter, in violation of SCR 20:1.4(a). Finally, the referee concluded that by failing to notify and advise the client of the specifics of the appeal, Attorney Goldstein failed to explain a matter to the extent reasonably necessary to permit the client to make an informed decision regarding his representation, in violation of SCR 20:1.4(b).

¶ 12. Attorney Goldstein challenges these conclusions on appeal. He argues that even after receiving notice of the appeal, J.V. opted to do nothing, such that he suffered no real prejudice. In addition, Attorney Goldstein contends that an appeal in a family law matter is effectively a separate action from the trial court proceeding, so that he did not consider himself to be representing J.V. on appeal, because J.V. did not separately retain him for that purpose. As such, he suggests he could not have violated a duty to communicate with J.V.

¶ 13. The referee considered these defenses in the evidentiary hearing, but was not persuaded. The referee explained:

> . . . there are a number of actions that Goldstein should reasonably have taken after the appeal was filed. First, he should have advised [J.V.] of the appeal in a more timely manner. Having learned of the appeal in August of 1999, Goldstein had an obligation to advise [J.V.] of the appeal prior to Goldstein's initial correspondence in relation to the appeal which was sent to [J.V.] on November 4, 1999.
>
> Goldstein should have provided [J.V.] with copies of the notice of appeal and the orders issued by the court of appeals in relation to briefing. Goldstein should have advised [J.V.] of the consequences of failing to file a responsive brief in the appeal. Further, Goldstein should have advised the court of appeals that he was not representing [J.V.] in the appeal. A copy of such notice should have been provided to [J.V.]

Report and Recommendation at 14.

¶ 14. The referee specifically discussed the testimony of Goldstein's expert witness, Attorney Greg Herman, regarding Attorney Goldstein's contention that he had no legal duty to J.V. because he did not really represent him on appeal. The referee noted that Attorney Herman testified that an attorney who represents a client in a family matter at the trial court level does not automatically become responsible for any appeal in the case. However, Attorney Herman testified that the more appropriate procedure would have been to advise the client of a deadline by which an agreement regarding legal fees and representation would need to be in place. If no such agreement were reached, then Attorney Goldstein would have had no responsibility for the appeal. Attorney Herman also acknowledged

that it would have been appropriate for Attorney Goldstein to advise the court of appeals that he was not involved in the appeal.

¶ 15. The referee ultimately decided that it was "unnecessary to determine whether or not Goldstein represented [the client] in the appeal." He explained:

> I am more concerned with the fact that Goldstein did not advise [J.V.] of the appeal for a period of approximately three months. Goldstein did not advise [J.V.] of the consequences of failing to reply to the appeal. Goldstein did not provide [J.V.] with copies of the Notice of Appeal and the orders issued by the Court of Appeals. Regardless of whether [J.V.] paid appellate legal fees or failed to respond to correspondence from Goldstein, Goldstein had the obligation to provide timely notice to [J.V.] of the appeal and the consequences of failing to reply to the appeal. He did not do so.

Report and Recommendation at 15. The referee did consider the fact that "Goldstein did advise [the client], in three separate letters, of the appeal" and that "[the client] had not paid requested fees in relation to the trial court matter." However, the referee was of the opinion that the admitted allegations of the complaint, together with Goldstein's testimony, constituted clear, satisfactory and convincing evidence that Goldstein violated SCR 20:1.1(a) and 20:1.4(b). We agree that Attorney Goldstein's actions in this regard failed to meet the standards required by these supreme court rules.

## MATTER OF G.S.

¶ 16. The complaint alleged and the referee found that G.S. retained Goldstein to represent her in two separate personal injury claims relating to two acci-

dents that allegedly occurred on February 22, 1990, and August 30, 1992, respectively.

¶ 17. With respect to the February 1990 claim, Attorney Goldstein did not file a lawsuit within the applicable statute of limitations, and he failed to inform G.S. of this fact. Attorney Goldstein did file a lawsuit regarding the August 1992 accident. However, he then failed to respond to interrogatories served upon him, or otherwise prosecute the case, despite an order from the court directing him to do so. Eventually, the defendants moved to dismiss the action with prejudice, and sought costs and attorney fees. Attorney Goldstein did not object and the lawsuit was dismissed, with prejudice. The court awarded costs and attorney fees to the defendant, but Attorney Goldstein did not advise G.S. of the motion to dismiss, or of the ensuing judgment for costs and attorney fees.

¶ 18. We recognize, as did the referee, that some mitigating circumstances existed here. Attorney Goldstein admits that he failed to file the 1990 personal injury claim and admits further that he does not recall the specific reasons for that omission. However, he defends his subsequent failure to communicate with his client, explaining that he made several attempts to reach her, without success. Moreover, it appears that the client did not try to contact him either, for a period of more than a year. Attorney Goldstein maintains that under those circumstances, it was reasonable for him to assume the client did not wish to proceed with her case. In addition, the record reflects that Attorney Goldstein had concerns about the merits of both cases, which presumably influenced his decision not to file the first lawsuit and his willingness to accede to the dismissal of the second lawsuit.

525

¶ 19.   Nonetheless, the referee expressed concern that Attorney Goldstein could offer "no written evidence of any attempts to communicate with [G.S.] in relation to either of the actions." *Id.* at 16. The referee explained:   "There is no written evidence of any attempts to reach [G.S.], explain the status of either case to her, explain the applicable statute of limitations to her, or to communicate the motion for dismissal of the 1992 action to her." *Id.* The referee was also concerned that Attorney Goldstein made no effort to avoid the dismissal with prejudice, or to avoid the imposition of costs and sanctions on his client. *Id.* at 16.

¶ 20.   On balance, the referee concluded that by failing to respond to interrogatories submitted concerning the 1992 accident claim, by failing to otherwise prosecute this claim, and by failing to attempt to resolve the litigation without prejudice, or the imposition of costs or attorney fees, Attorney Goldstein failed to act. with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

¶ 21.   In addition, by failing to inform G.S. that he would not file a lawsuit in connection with her 1990 claim, and by failing to inform G.S. that a motion to dismiss her 1992 claim had been filed, and that the court subsequently dismissed the claim with prejudice and awarded costs and attorney fees, Attorney Goldstein failed to keep a client reasonably informed of the status of a matter, in violation of SCR 20:1.4(a).

¶ 22.   Finally, the referee concluded that by failing to inform his client that he did not believe either of her cases had merit and by failing to explain her options with regard to the motion to dismiss, Attorney Goldstein failed to explain matters to the extent reasonably

necessary to permit a client to make informed decisions regarding the representation, in violation of SCR 20:1.4(b).

¶ 23. We agree that the referee's findings of fact with respect to this matter constitute sufficient factual findings to support the conclusion that Attorney Goldstein violated SCR 20:1.3, 20:1.4(a), and 20:1.4(b).

## MATTER OF J.W.

¶ 24. In early 2001 J.W. retained Attorney Goldstein to represent him in a criminal matter. The matter ultimately went to trial in Milwaukee County Circuit Court, and in May 2001 J.W. was convicted of armed robbery and sentenced to 14 years in prison. At the sentencing hearing Attorney Goldstein asked J.W. if he wanted to pursue postconviction relief and J.W. responded "yes." J.W. and Attorney Goldstein signed the requisite form notifying the court of J.W.'s notice of intent to pursue postconviction relief. However, Attorney Goldstein then failed to file the form.

¶ 25. The referee concluded that by failing to file the "Notice of Intent" form, Attorney Goldstein failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3. In so holding, the referee noted that such failure was a minimal violation of SCR 20:1.3, stating: "I see Goldstein's actions in failing to file the Notice as simple forgetfulness. Goldstein is not the first attorney to forget to file such Notice. His actions caused no harm to the defendant. *This was a very minimal violation of SCR 20:1.3.*" *Id.* at 17 (emphasis added).

¶ 26. On appeal, Attorney Goldstein acknowledges that he may have forgotten to file the form, but suggests that it is also possible the error is attributable

to the clerk's office. He notes further that J.W. was permitted to proceed with his appeal, such that there was no real prejudice to the client as a result of his oversight. We agree with the referee's conclusion that this was a minimal violation of SCR 20:1.3, but it was a violation nonetheless.

## MATTER OF M.H.

¶ 27. The complaint alleged and the referee found that on or about February 2, 2001, Attorney Goldstein was retained to represent M.H. in a pending parole revocation hearing. Attorney Goldstein agreed to handle the revocation hearing for what M.H. thought would be a "flat fee" of $750. This fee was paid to Attorney Goldstein in installments in February, March, and April 2001. There was no written fee agreement.

¶ 28. The parties vigorously disputed how the attorney-client relationship proceeded. M.H. asserted that he made repeated attempts to arrange meetings with Attorney Goldstein to discuss the pending revocation proceedings. He testified that he was concerned because he had only spoken with Attorney Goldstein briefly by telephone, and they had not discussed specifics of the upcoming revocation proceeding. M.H. asserted that he made arrangements to meet Attorney Goldstein one hour before the scheduled revocation hearing, but Goldstein failed to appear for the pre-hearing meeting. It is undisputed that Attorney Goldstein did appear for the hearing, but M.H. believed Goldstein was not adequately prepared. Accordingly, M.H. discharged Attorney Goldstein and requested a refund of all legal fees paid.

¶ 29. Attorney Goldstein maintains that he was prepared for the revocation hearing. He produced evidence indicating that he did meet with M.H. on a date

prior to the revocation hearing. However, he admitted that he had no recollection of the details of the meeting and was unable to produce notes, time records, or other file materials to demonstrate that he discussed the matter with his client.

¶ 30.   In any event, following termination of the representation, Attorney Goldstein sent M.H. an itemized billing dated June 27, 2001, indicating that an *additional* $430 was due in fees relating to the revocation matter. Attorney Goldstein admitted he never informed M.H. of his legal billing rate.

¶ 31.   Ultimately, after considering the conflicting evidence presented at the hearing, the referee concluded that Attorney Goldstein had failed to keep his client reasonably informed of the status of the matter, in violation of SCR 20:1.4(a).

¶ 32.   The referee was clearly more concerned about the lack of a written fee agreement in this matter. Attorney Goldstein testified that his general practice was to quote "flat fees" when retained in such matters. He testified that he believed in flat fee arrangements and that he would generally absorb any additional charges that exceeded the flat fee he quoted his clients. In this matter, however, Attorney Goldstein charged and received a flat fee of $750 to represent M.H., but after being fired by M.H. he proceeded to submit an additional bill for $430. Moreover, Attorney Goldstein acknowledged that he did not discuss the prospect of fees beyond the $750 with his client or with the individuals who initially hired him on the client's behalf. Accordingly, the referee found that:

> There was no way [the client], or the persons who hired Goldstein on behalf of [the client], would know if additional legal fees would be incurred, and if so, how

those fees would be computed. Goldstein acknowledges that the fee arrangement was not reduced to writing. Goldstein produced no documentation in support of his alleged fee position in this matter. . . .

Moreover, Goldstein did not produce the file for this matter or otherwise document the fees he charged for his work in this matter. Report and Recommendation at 18.

¶ 33. Thus, the referee concluded that by failing to clearly articulate or reduce to writing his fee agreement with his client, Goldstein failed to communicate the basis or rate to the client within a reasonable time after the commencement of his representation, in violation of SCR 20:1.5(b).

¶ 34. On appeal, Attorney Goldstein admits there was no written billing agreement but maintains he was adequately prepared to represent M.H., thus challenging the referee's conclusion that he violated SCR 20:1.4. While the court is mindful that representing criminal defendants may be a challenging practice, Attorney Goldstein does not detail or provide documentary evidence to support his claim that he adequately communicated with this client and we conclude that the record supports the referee's conclusions of law with respect to this matter.

MATTER OF J.S. and G.M.

¶ 35. The complaint alleged and the referee found that J.S. retained Attorney Goldstein in October 2001 to represent her son, G.M., who had been charged in Outagamie county with recklessly endangering the safety of a minor by using a dangerous weapon.

¶ 36. When Attorney Goldstein was retained, G.M. was represented by a public defender. However,

his mother wanted G.M. to have private counsel. Indeed, the referee found that J.S. specifically told Attorney Goldstein that she did not want her son to be represented by a public defender in any upcoming court appearances. Attorney Goldstein requested a $1500 retainer to undertake this representation.

¶ 37. A preliminary hearing was scheduled for October 9, 2001. A few days prior to the scheduled hearing J.S. paid Attorney Goldstein $800 of the requested $1500 retainer, which Goldstein accepted. Goldstein advised J.S. that, due to a conflict, he would not be available for the October 9, 2001, hearing, but he assured J.S. that he would arrange for another private attorney to represent her son at the hearing.

¶ 38. The day before the scheduled hearing Attorney Goldstein sent a letter to G.M.'s public defender, John Zadrazel, requesting that Attorney Zadrazel represent G.M. at the October 9, 2001, hearing. The letter stated that Attorney Goldstein had not been paid a retainer fee, and stated he might be retained in the future. The letter requested that Attorney Zadrazel continue to represent G.M. until Attorney Goldstein received payment.

¶ 39. Attorney Zadrazel appeared on G.M.'s behalf at the preliminary hearing. When J.S. learned of this she fired Attorney Goldstein and requested the return of her deposit. Goldstein returned $600 of the $800 he had received.

¶ 40. The referee observed:

> Goldstein knew [G.M. and J.S.] hired him because they wanted [G.M.] represented by a private attorney. While Goldstein copied his letter of October 8, 2001, to [G.M.], such action was insufficient given the hearing

> was on October 9, 2001. I am also satisfied that [J.S.] was led to believe that Goldstein did represent [G.M.] after she paid the $800.00.

Report and Recommendation at 19.

¶ 41. Thus, the referee found that by failing to inform G.M. or J.S. that he had arranged for a public defender to appear on behalf of G.M., Attorney Goldstein failed to explain a matter to the extent reasonably necessary to permit a client to make an informed decision regarding representation, in violation of SCR 20:1.4(b).

¶ 42. On appeal Attorney Goldstein challenges this conclusion. From his perspective, he had not been fully retained because he had received only a portion of the requested retainer.

¶ 43. As the referee observed, this incident exemplifies the problems that may develop when lawyers fail to put fee arrangements in writing, or to adequately explain such arrangements to their clients.

¶ 44. Attorney Goldstein accepted a partial payment for a requested retainer. In the absence of a written agreement specifying the effect of this action, the client and his family were placed in a difficult predicament. The client and his family believed they had hired an attorney and were not clearly told otherwise. However, when the retainer was not paid in full, Attorney Goldstein then took the position that he was not representing G.M. Indeed, the referee used Attorney Goldstein's letter to the state public defender in the G.M. matter as an example of the "confusion that results from Goldstein's policies."

¶ 45. In the letter, Attorney Goldstein indicates that he will "eventually" represent G.M., but he then proceeds to request information about the case. Also,

after J.S. fired Goldstein he wrote a letter to the state public defender indicating he was "no longer representing [G.M.]." The record supports the referee's conclusion that by failing to explain the consequences of a partial payment of a retainer to his clients, Attorney Goldstein violated SCR 20:1.4(b).

## MATTER OF C.K.

¶ 46. On or about September 24, 1999, C.K.'s father, retained Attorney Goldstein to represent C.K., who was incarcerated at the Waupun Correctional Institution following parole revocation. C.K.'s father paid Attorney Goldstein a $1000 retainer. There was no written fee agreement.

¶ 47. C.K.'s father testified that he believed the retainer would cover research, investigation, and the pursuit of available remedies on behalf of his son. Attorney Goldstein testified that he believed the $1000 retainer was only for purposes of reviewing the matter and researching possible remedies for the client.

¶ 48. It is undisputed that Attorney Goldstein did research the background and history of the case, and communicated with the client's probation officer. He also wrote to the client several times, asking C.K. to telephone him as soon as possible.

¶ 49. When he received no response to these communications, Attorney Goldstein wrote to the client's father, asking him to contact Attorney Goldstein to arrange a meeting to discuss the results of his preliminary research. Neither C.K. nor his father ever replied to Attorney Goldstein's letters.

¶ 50. Nonetheless, on or about December 4, 2000, the client filed a grievance with the OLR, complaining that he had not heard from his attorney for over a year.

He also asserted that the retainer funds of $1000 paid to Goldstein were to cover not only research and investigation, but also the pursuit of available remedies on his behalf.

¶ 51. The complaint filed in this matter charged that Attorney Goldstein violated his duty of communication by his handling of this matter. However, the referee disagreed, concluding that the OLR had not succeeded in showing that Attorney Goldstein had failed to explain the status of the matter to his client to the extent reasonably necessary to permit his client to make informed decisions regarding the representation.

¶ 52. With respect to the fee arrangement, however, the referee stated: "Goldstein should have adequately discussed his fees with the [clients] or placed his fee agreement with the [clients] in writing to avoid any misunderstandings." The referee agreed with Attorney Goldstein's assertion that it was unreasonable for the clients to expect a $1000 retainer in a serious felony case to cover not only investigation and review by a lawyer, but also additional legal proceedings and pursuit of additional remedies. However, the referee did conclude that by failing to clearly articulate or reduce to writing what services his fee covered, Attorney Goldstein failed to communicate the basis or rate to the client within a reasonable time after the commencement of the representation, in violation of SCR 20:1.5(b).

¶ 53. On appeal, Goldstein admits that there was no written fee agreement, but renews his contention that it was unreasonable for the clients to think $1000 would cover additional legal proceedings. He reminds the court that the clients never responded to his communications.

¶ 54. As noted, Attorney Goldstein prevailed on the allegation that he failed to explain the status of the matter to these clients. This conclusion reflects the referee's recognition of the fact that the clients neither contacted Attorney Goldstein nor responded to his communications. However, the record supports the referee's conclusions with respect to the violation of SCR 20:1.5(b). While the clients' expectations with respect to what their retainer would cover were unreasonable, it was incumbent upon the lawyer to clarify these expectations.

¶ 55. We turn to the question of the appropriate discipline for Attorney Goldstein's misconduct. The OLR contends that Attorney Goldstein's license should be suspended for a period of six months, and has cited a number of cases to support that position. Attorney Goldstein contends that a public reprimand or, at most, a two-month suspension, is warranted here. After careful analysis and thorough discussion Referee Winiarski recommended this court suspend Attorney Goldstein's license to practice law in Wisconsin for a period of four months, and recommended further that Attorney Goldstein pay the costs of this proceeding.

¶ 56. Attorney Goldstein has been in practice since 1951. His reputation is clearly that of an "experienced, prepared and trustworthy attorney." The court is also mindful that Attorney Goldstein has recently had some serious medical issues to contend with. The referee emphasized that there was no malice involved in the incidents, and acknowledged the challenges inherent in representing criminal defendants. He also concluded, and we agree, that some of the infractions described herein were fairly minor.

¶ 57. However, he noted further, and again we agree, that the J.V. matter is quite serious. In addition,

we are mindful that the complaint filed against Attorney Goldstein implicated some six separate client matters, thus evidencing "disturbing patterns" followed by Goldstein in the handling of cases.

■

¶ 58.  We commend Referee Winiarski for his careful consideration of the evidence and mitigating circumstances presented in this matter, and for his thorough and well-prepared report and recommendation. We agree that the referee's findings evidence a pattern of misconduct with respect to failure to establish adequate fee arrangements and, to a lesser extent, with respect to the failure to complete cases or communicate adequately with clients. We adopt the referee's findings and conclusions in this matter, and we accept the referee's recommendation that a four-month suspension of Attorney Goldstein's license to practice law is appropriate discipline under the circumstances of this case. We agree that Attorney Goldstein should be required to pay the costs of this disciplinary proceeding.

¶ 59.  Upon the foregoing reasons,

¶ 60.  IT IS ORDERED that the license of Attorney Russell Goldstein to practice law in Wisconsin is suspended for a period of four months, and until reinstated by this court, effective August 4, 2004.

¶ 61.  IT IS FURTHER ORDERED that Attorney Russell Goldstein comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 62.  IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Russell Goldstein shall pay to the Office of Lawyer Regulation the costs of this proceeding in the amount of $11,551.29. If the costs are not paid within the time specified, and absent a

showing to this court of his inability to pay the costs within that time, the license of Attorney Russell Goldstein to practice law in Wisconsin shall be suspended until further order of the court.