# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP484-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Andrew J. Bryant, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>　　　　Complainant,<br>　　v.<br>Andrew J. Bryant,<br>　　　　Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST BRYANT

| | |
|---|---|
| OPINION FILED: | June 24, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ROGGENSACK, J., concurs. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2012AP484-D

STATE OF WISCONSIN                    :         IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Andrew J. Bryant, Attorney at Law:**

**Office of Lawyer Regulation,**

          **Complainant,**

     **v.**

**Andrew J. Bryant,**

          **Respondent.**

**FILED**

**JUN 24, 2014**

Diane M. Fremgen
Clerk of Supreme Court

          ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

          ¶1   PER CURIAM.   We review the report and recommendation of the referee, Attorney Lisa C. Goldman, which was based in part upon the stipulation of the Office of Lawyer Regulation (OLR) and Attorney Andrew J. Bryant.   As jointly requested by the parties, the referee recommends that Attorney Bryant's license be suspended for a period of four months.   The referee, however, adds to the parties' stipulation and recommends that the court impose a number of conditions upon Attorney Bryant's

reinstatement to the practice of law and upon his practice of law following his reinstatement.

¶2 After thoroughly reviewing the parties' stipulation, the referee's recommendation, and the record in this matter, we conclude that the stipulated facts demonstrate that Attorney Bryant committed all of the 15 counts of misconduct alleged in the OLR's complaint. We determine that the requested level of discipline, a four-month suspension, is an appropriate level of discipline to impose for Attorney Bryant's professional misconduct. While we agree with the referee that Attorney Bryant should be required to pay restitution to two former clients, we do not follow the referee's recommendation regarding the imposition of a monitoring program. We impose other conditions on Attorney Bryant's reinstatement that we believe will adequately ensure Attorney Bryant's ability to practice law and conform his conduct to the Rules of Professional Conduct for Attorneys.

Attorney Bryant's Practice and Disciplinary History

¶3 According to the referee's report, Attorney Bryant was admitted to the practice of law in Wisconsin in 1992. He most recently practiced as a solo attorney in Verona.

¶4 Attorney Bryant has received professional discipline on one prior occasion. In January 2012 Attorney Bryant received a consensual private reprimand arising out of his representation of a client in a post-divorce proceeding regarding the modification of child support. Private Reprimand, No. 2012-01. His misconduct in that matter included a lack of competence, a

lack of diligence, a failure to consult with his client regarding the means by which the objectives of the representation were to be pursued, and a failure to keep his client adequately informed.

¶5 In addition, although it does not qualify as the imposition of professional discipline, it should be noted that in 2012 this court issued two separate orders temporarily suspending Attorney Bryant's license due to his willful failure to cooperate with OLR grievance investigations. Both of those temporary suspensions have remained in effect up to the date of this opinion.

Allegations of the Complaint

¶6 The OLR's complaint in this matter alleged 15 separate counts of misconduct arising out of three client representations and the practice of law during a period of suspension.

¶7 The first count of the OLR's complaint alleged that Attorney Bryant had failed to pay his bar dues and supreme court assessments and to provide a signed trust account certification, all of which were due on July 1, 2010. In September 2010 the State Bar of Wisconsin sent Attorney Bryant a letter advising him that if he did not pay his bar dues and assessments and provide his trust account certification by 5:00 p.m. on November 1, 2010, his license to practice law in this state would be automatically suspended. Attorney Bryant failed to comply with his obligations, and his law license was suspended on November 1, 2010. On November 4, 2010, Attorney Bryant appeared at circuit court proceedings on behalf of clients in

3

two separate actions—one in Dane County circuit court and one in Columbia County circuit court. In addition, in the Columbia County case Attorney Bryant also filed a motion and affidavit on behalf of his clients. Attorney Bryant's law license was subsequently reinstated on November 9, 2010. The complaint alleged that Attorney Bryant's practice of law while his license was administratively suspended constituted a violation of

SCRs 10.03(6),[1] 20:1.15(i)(4),[2] and 22.26(2),[3] which are enforced via SCR 20:8.4(f).[4]

¶8 Counts two through six of the complaint related to Attorney Bryant's representation of V.F. and J.R., who were husband and wife. In September 2009 the couple retained

---

[1] SCR 10.03(6) states: Penalty for nonpayment of dues.

If the annual dues or assessments of any member remain unpaid 120 days after the payment is due, the membership of the member may be suspended in the manner provided in the bylaws; and no person whose membership is so suspended for nonpayment of dues or assessments may practice law during the period of the suspension.

[2] SCR 20:1.15(i)(4) states: Suspension for non-compliance.

The failure of a state bar member to file the certificate is grounds for automatic suspension of the member's membership in the state bar in the same manner provided in SCR 10.03(6) for nonpayment of dues. The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action.

[3] SCR 22.26(2) provides as follows:

An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

[4] SCR 20:8.4(f) states it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

Attorney Bryant for the purpose of filing a joint petition for divorce. Attorney Bryant did not obtain a written conflict waiver for the representation of both individuals. He told V.F. that the entire representation could be completed for $1,500 so V.F. gave Attorney Bryant a check for that amount. Attorney Bryant deposited the funds into his business account but did not follow any of the requirements for the advanced fee alternative procedure in SCR 20:1.15(b)(4m). Although Attorney Bryant expected that the cost of the representation would exceed $1,000, he did not prepare a written fee agreement.

¶9 Shortly after his initial meeting with V.F. and J.R., Attorney Bryant prepared a joint petition for divorce, obtained the signatures of both spouses, and filed the petition in the Dane County circuit court. In November 2009 Attorney Bryant spoke with V.F. about the need to obtain an expedited divorce hearing due to the deteriorating mental competence of J.R. Attorney Bryant promised to prepare and submit a proposed Marital Settlement Agreement (MSA) to V.F. for his review. In January 2010 Attorney Bryant met with both V.F. and J.R. to review their financial disclosure statements and to discuss the proposed MSA. In April 2010 Attorney Bryant received an executed signature page for the MSA from V.F. He did not receive a signature page from J.R.

¶10 In May 2010 the circuit court issued a notice stating that due to inactivity in the matter, it would place the divorce action on the June 25, 2010 docket for possible dismissal. Neither Attorney Bryant nor either of the parties appeared

6

before the circuit court on June 25, 2010, causing the court to dismiss the action. The court issued a written order of dismissal in early July 2010.

¶11 Attorney Bryant did not notify his clients of the dismissal. Indeed, V.F. and J.R. did not receive any correspondence from Attorney Bryant from September 2009 through September 2010. Around that time V.F. learned from his daughter that the divorce action had been dismissed. On several occasions he asked Attorney Bryant to re-file the divorce petition, but Attorney Bryant did not do so. In December 2010 V.F.'s daughter sent multiple e-mails to Attorney Bryant again asking him to re-file the divorce petition and to seek an expedited hearing. Finally, on December 16, 2010, Attorney Bryant re-filed the divorce petition, although he did not ask for an expedited hearing.

¶12 On February 1, 2011, V.F. terminated Attorney Bryant's representation and retained Attorney Anthony Menting to proceed with the divorce action. On that same date Attorney Menting sent a draft stipulation and order for substitution of counsel to Attorney Bryant and also requested that Attorney Bryant provide a complete copy of his file on the matter. Attorney Bryant did not provide the file or otherwise respond to the letter. Attorney Menting sent another letter to Attorney Bryant regarding these matters in mid-February. On March 16, 2011, Attorney Bryant forwarded the file to Attorney Menting.

¶13 On March 29, 2011, Attorney Bryant sent an invoice to V.F. The invoice sought $800 for Attorney Bryant's fees and

$369 for disbursed costs.  Attorney Bryant offered to return the remainder of the $1,500 advanced fee ($331) to V.F.  On June 24, 2011, Attorney Bryant sent a check to V.F. in the amount of $331 pursuant to his offer.  V.F. rejected the check.

¶14 The complaint alleged that Attorney Bryant had committed five ethical violations in connection with his representation of V.F. and J.R.  By representing two individuals in a joint divorce petition without obtaining a written waiver of the conflict, Attorney Bryant violated SCR 20:1.7(a)[5] (Count Two).  By failing to utilize a written fee agreement when he had agreed to represent V.F. and J.R. for a fee of $1,500, Attorney Bryant violated SCR 20:1.5(b)(2)[6] (Count Three).  By accepting the $1,500 advanced fee and failing to deposit the advanced fee into his trust account in the absence of any intent to utilize

---

[5] SCR 20:1.7(a) states:

Except as provided in par. (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

[6] SCR 20:1.5(b)(2) states that "[i]f the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing."

the alternative advanced fee procedure, Attorney Bryant violated SCR 20:1.15(b)(4)[7] (Count Four). The complaint further alleged that Attorney Bryant had demonstrated a lack of reasonable diligence, in violation of SCR 20:1.3,[8] by failing to advance the interests of his clients for more than a year after the clients informed him of their need to expedite the matter due to J.R.'s failing health (Count Five). Finally, Attorney Bryant's failure to provide the clients' file to successor counsel in a timely manner, despite requests to do so, constituted a violation of SCR 20:1.16(d)[9] (Count Six).

¶15 Counts seven through twelve of the complaint related to Attorney Bryant's representation of client M.C. Attorney

---

[7] SCR 20:1.15(b)(4) states: Unearned fees and cost advances.

Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[8] SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[9] SCR 20:1.16(d) states as follows:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Bryant was retained by M.C. as successor counsel in a personal injury lawsuit that M.C. had filed arising out of injuries he had suffered in a motor vehicle collision. Attorney Bryant first appeared on M.C.'s behalf at a scheduling conference held on January 6, 2010. The resulting scheduling order required M.C. to provide the defendants with a preliminary list of lay and expert witnesses and a written summary report by February 5, 2010. The order contained the following statement in bold capital letters: **"FAILURE TO ABIDE BY THIS ORDER MAY RESULT IN SANCTIONS."** Attorney Bryant did not provide either the preliminary witness list or the summary report as mandated by the scheduling order, nor did he request an extension to do so.

¶16 Due to Attorney Bryant's noncompliance, the circuit court held a second scheduling conference on May 14, 2010. At that time, three months after the initial deadline, Attorney Bryant filed M.C.'s list of expected lay and expert witnesses. Attorney Bryant named all of M.C.'s treating physicians and a vocational expert. At the second scheduling conference, the circuit court required M.C. to provide all expert witness reports by July 16, 2010. The resulting scheduling order contained the same warning about possible sanctions for noncompliance as had been in the first scheduling order. Despite the warning, Attorney Bryant failed to provide the expert witness reports by the scheduled date and did not seek an extension of the deadline.

¶17 Attorney Bryant's noncompliance caused the defendants to file a motion for sanctions. Attorney Bryant did not file a

10

written response to the motion. After holding a hearing on the motion on August 26, 2010, the court decided not to impose sanctions at that time. It issued a third scheduling order, which extended the deadline for submitting expert witness reports until October 8, 2010. This order again contained the warning about the possibility of sanctions in the event of noncompliance. It also specifically provided that if the expert witness reports were not submitted by the new deadline, M.C. would be barred from introducing the experts' testimony at trial. Attorney Bryant again failed either to comply with the new scheduling order or to seek a further extension of time.

¶18 The defendants renewed their motion for sanctions, seeking an order prohibiting M.C. from introducing any expert testimony. Attorney Bryant did not file a written response to the motion or advise M.C. that the motion had been filed. On October 25, 2010, the court entered an order in which it required M.C. within 10 days to pay to the defendants' counsel the $1,087.50 in attorney fees that had been incurred in connection with the August 26, 2010 hearing on the defendants' original motion to compel. Attorney Bryant did not pay the sanction himself or notify M.C. that he had been ordered to pay the defendants' attorney fees.

¶19 In November 2010 the defendants filed a motion to dismiss due to M.C.'s failure to prosecute and the noncompliance with the various court orders. Attorney Bryant again did not file a response or notify M.C. that such a motion had been filed. Finding that the plaintiff's failure to comply with its

11

orders had been egregious, the circuit court granted the motion to dismiss. It issued a formal order of dismissal with prejudice on January 6, 2011. Attorney Bryant did not inform M.C. that his complaint had been dismissed and could not be re-filed.

¶20 On February 28, 2011, M.C. met with Attorney Bryant to discuss his case. At that time Attorney Bryant admitted that he had acted improperly, that M.C.'s case had been dismissed with prejudice, and that M.C. would not be able to obtain any recovery for his injuries.

¶21 According to Attorney Bryant's file, during the nearly one-year period in which he had represented M.C., he had not served any discovery requests on any of the defendants, had not interviewed any of M.C.'s treating physicians, and had not obtained any expert reports (even provisional ones) from the physicians or from a vocational expert. He did not prepare or file any written responses to the sanction motions. There also is no evidence that Attorney Bryant sent any written or electronic correspondence to M.C. regarding the case or the various sanction motions filed by the defendants.

¶22 The complaint alleged six counts of misconduct related to Attorney Bryant's representation of M.C. Count Seven of the complaint alleged that Attorney Bryant had violated SCR 20:1.1[10]

---

[10] SCR 20:1.1 states, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

12

by failing to provide the requisite skill, thoroughness, and preparation reasonably necessary for the representation. The complaint also alleged that Attorney Bryant had failed to act with reasonable diligence, in violation of SCR 20:1.3 (Count Eight), and had failed to make reasonable efforts to expedite M.C.'s litigation, in violation of SCR 20:3.2[11] (Count Nine). In addition, by failing to advise M.C. about his failures to comply with the various scheduling orders, about the two sanction motions, and ultimately about the dismissal of his complaint, Attorney Bryant failed to keep his client reasonably informed about the status of the representation, in violation of SCR 20:1.4(a)(3)[12] (Count Ten). Those same failures of communication also formed the basis for Count Eleven of the complaint, which alleged a violation of SCR 20:1.4(b)[13] for failing to explain matters sufficiently to allow M.C. to make informed decisions regarding the representation. Count Twelve of the complaint alleged that Attorney Bryant had knowingly disobeyed the circuit

---

[11] SCR 20:3.2 states, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

[12] SCR 20:1.4(a)(3) states that a lawyer shall "keep the client reasonably informed about the status of the matter; . . . ."

[13] SCR 20:1.4(b) states, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

court's various scheduling and sanction orders, leading to the dismissal of M.C.'s complaint, in violation of SCR 20:3.4(c).[14]

¶23 The last set of counts in the complaint related to Attorney Bryant's representation of C.H., a respondent in a divorce action. Attorney Bryant apparently entered an appearance in the divorce action after it had been pending for a substantial amount of time. On September 5, 2007, approximately six months after he entered his appearance on C.H.'s behalf, opposing counsel sent proposed findings of fact, conclusions of law, and a judgment of divorce (the judgment) to Attorney Bryant for his review pursuant to a directive from the court. On October 24, 2007, opposing counsel sent a letter to the circuit court stating that Attorney Bryant had not responded to the proposed judgment. On October 30, 2007, opposing counsel filed a motion for contempt, which was noticed for hearing on November 28, 2007. On that same date the court signed the proposed judgment without receiving any comments on the document from Attorney Bryant. One provision of the judgment was that D.H., C.H.'s spouse, was to receive ownership of some individual retirement accounts (IRAs) and an annuity that were titled in C.H.'s name and were being administered by Northwestern Mutual Life Insurance Company (NML).

---

[14] SCR 20:3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists; . . . ."

¶24 On November 28, 2007, Attorney Bryant filed a notice of appeal from the judgment of divorce signed by the circuit court. On that same date, the circuit court conducted a hearing on D.H.'s motion for contempt. The court found C.H. in contempt and ordered her to prepare a Qualified Domestic Relations Order (QDRO) that would transfer specified assets to D.H.

¶25 Attorney Bryant subsequently contacted Jewel Goodwin at NML regarding the transfer of the specified assets to D.H. Goodwin informed Attorney Bryant that NML required a copy of the court's judgment before it would transfer the assets. On December 28, 2007, Attorney Bryant sent NML a copy of the notice of appeal he had filed rather than a copy of the judgment. His communication informed NML that C.H. had "appealed the entire decision." On the basis of this representation and document, NML did not transfer the assets to D.H.

¶26 When D.H.'s counsel had not received a draft QDRO by January 10, 2008, he requested a status conference with the circuit court. The court subsequently issued an order directing Attorney Bryant to draft the QDRO consistent with the court's judgment. On February 18, 2008, D.H.'s counsel sent a letter to Attorney Bryant inquiring about the status of the QDRO. On April 1, 2008, D.H.'s counsel sent a letter to the circuit court complaining that he had still not received a completed QDRO from Attorney Bryant. In late May 2008, the court ordered Attorney Bryant to pay $500 to opposing counsel for his fees connected with the delay in the preparation of the QDRO. The court also ordered Attorney Bryant to turn over all materials relating to

the QDRO to a neutral attorney selected by the court, who would prepare the QDRO. The court further ordered that the neutral attorney's fees would be paid by Attorney Bryant and his client.

¶27 In October 2009 the court of appeals affirmed the circuit court's judgment of divorce. Shortly thereafter, D.H. sent a copy of the court of appeals' decision to Goodwin at NML, who forwarded the information to Connie Piskula, who handled IRA matters. Although the circuit court's judgment had now been affirmed on appeal, on October 29, 2009, Attorney Bryant sent a facsimile transmission to Piskula, which stated that "the status of the case is pending, issues remain unresolved and no distributions or changes to accounts or policies should be made at this time." On November 3, 2009, Attorney Bryant telephoned Piskula and told her to wait on the transfer of the assets to D.H. because Attorney Bryant had filed a motion for rehearing. This was a false statement because he had not filed any such motion.

¶28 On November 17, 2009, Piskula sent a facsimile transmission to Attorney Bryant, which recited the statements he had made during the telephone call on November 3, 2009, and asked for a copy of the motion for rehearing. The communication further advised Attorney Bryant that if Piskula did not receive a copy of the motion by November 20, 2009, she would lift all transfer restrictions on C.H.'s accounts. Attorney Bryant did not respond. Consequently, NML transferred ownership of the IRAs and the annuity to D.H. on December 1, 2009, more than two years after the entry of the divorce judgment.

16

¶29 In a hearing held shortly after the transfer of the accounts to D.H., the circuit court described Attorney Bryant's statements in the matter as "misleading," "not truthful" and "undertaken for the purpose of delay."

¶30 The complaint alleged three counts arising out of Attorney Bryant's representation of C.H. and his interactions with NML. By taking steps to delay the transfer of ownership of the IRA and annuity accounts, when Attorney Bryant knew that such actions would serve merely to harass or injure D.H., Attorney Bryant violated SCR 20:3.1(a)(3)[15] (Count Thirteen). Further, Attorney Bryant's false statements to NML in which he had misrepresented the status of the appeal and had claimed that a motion for rehearing had been filed constituted violations of SCR 20:4.1(a)(1)[16] (Count Fourteen). Finally, the complaint alleged that those same misrepresentations had also constituted violations of SCR 20:8.4(c)[17] (Count Fifteen).

Procedural History before the Referee

---

[15] SCR 20:3.1(a)(3) states that in representing a client, a lawyer shall not "file a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of the client when the lawyer knows or when it is obvious that such an action would serve merely to harass or maliciously injure another."

[16] SCR 20:4.1(a)(1) states that in the course of representing a client a lawyer shall not knowingly "make a false statement of a material fact or law to a 3rd person; . . . ."

[17] SCR 20:8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

17

¶31 Attorney Bryant did not file an answer to the complaint. After the referee was appointed, Attorney Bryant reached a stipulation with the OLR. The stipulation was not set forth in a written document signed by the parties. Rather, at a May 17, 2012 hearing the parties orally put the stipulation on the record through the OLR's examination of Attorney Bryant. Through his answers to the OLR's questions, Attorney Bryant stipulated that the factual allegations in the complaint were accurate and that he had committed all of the 15 counts of misconduct alleged in the complaint. With respect to the requested sanction, Attorney Bryant acknowledged that the OLR was seeking a four-month suspension of his license to practice law in Wisconsin, and he agreed to jointly request that level of discipline. Attorney Bryant also stipulated that he owed restitution in the amount of $1,500 to his former client V.F.

¶32 During the examination, the OLR's counsel obtained statements from Attorney Bryant that he understood the allegations of the complaint, that he was not being coerced into entering into the stipulation, that no one had promised him anything to enter into the stipulation, that he understood that he had a right to consult with and be represented by counsel, that he was waiving his right to counsel, and that he was entering the stipulation freely and voluntarily.

¶33 Following the examination conducted by counsel for the OLR, the referee also asked a series of questions of Attorney Bryant. One of the questions the referee asked was whether there was anything Attorney Bryant wished the referee to know

18

before she prepared her report. Attorney Bryant spoke in response about having a sense of remorse and about accepting responsibility for his misconduct. During this part of the hearing, Attorney Bryant also agreed to repay the entire $1,500 advanced fee to V.F. and J.R. He did not mention any specific factors that had caused him to engage in the misconduct.

¶34 Over the next several months following this hearing, the referee asked the parties to provide information regarding Attorney Bryant's employment history so she could consider that in the context of preparing her report and sanction recommendation. She was interested in particular whether there was a reason why Attorney Bryant's conduct had changed after having practiced approximately 13 years without any misconduct. The referee specifically asked whether Attorney Bryant had experienced any mental health or substance abuse problems.

¶35 Attorney Bryant did not respond to the referee's repeated requests for information. The OLR on multiple occasions advised the referee that it was unaware of any issues related to mental health or substance abuse and that there was no evidence regarding those matters in the record of the proceeding. It stated that its file in the matter did not "indicate the need to explore such issues."

¶36 On September 13, 2012, the OLR's counsel sent a letter to the referee, stating that an OLR investigator had received a letter indicating that Attorney Bryant was receiving treatment for mental health issues. It again asserted that it had not

19

possessed any information regarding this issue prior to this letter.

¶37 On September 18, 2012, the referee filed her report and recommendation. Based on Attorney Bryant's stipulation, the referee found that the allegations of the complaint had been admitted and that Attorney Bryant had violated each of the rules as alleged in the 15 counts of the complaint.

¶38 Turning to the issue of the appropriate level of discipline, the referee agreed with the parties that a four-month suspension of Attorney Bryant's license to practice law in this state would be proper. She added a recommendation that as a condition of reinstatement Attorney Bryant should be ordered "to contact WisLAP[18] and agree to all evaluations WisLAP demands at Mr. Bryant's expense, to sign a monitoring contract with WisLAP if so recommended by WisLAP, to execute any documents and releases necessary to allow WisLAP to monitor Mr. Bryant's treatment, to follow all recommendations of WisLAP, pay all fees associated with a contract with WisLAP, and successfully complete his WisLAP contract . . . ." In light of Attorney Bryant's agreement at the May 17, 2012 hearing, the referee further recommended that Attorney Bryant should be ordered to pay $1,500 in restitution to V.F. and J.R.[19] Finally, the

---

[18] WisLAP refers to the Wisconsin Lawyers Assistance Program, which is a member service of the State Bar of Wisconsin.

[19] The OLR's statement on restitution concurs with this recommendation for restitution.

referee recommended that Attorney Bryant be required to pay the full costs of this proceeding.[20]

¶39 In the discussion section of her report, the referee commented that Attorney Bryant had been "very remorseful" for his actions and had "exhibited genuine concern for his conduct." The referee also raised the issue of mental health or substance abuse problems. She acknowledged that there was no evidence in the record regarding such issues. Moreover, the referee stated that at the May 17, 2012 hearing Attorney Bryant had appeared coherent, had acknowledged the nature of his behavior, and had accepted responsibility for his misdeeds. The referee explained that she had sought the information regarding Attorney Bryant's employment history in order to demonstrate in her report that his misconduct at issue in this proceeding had been a "blip on an otherwise healthy career." The referee continued that Attorney Bryant's ongoing failure over several months to respond to any of her requests for the employment information had bewildered her and had led her to believe that whatever problems had precipitated the misconduct had not been resolved. Thus, she had gone beyond the parties' stipulation to include the recommendation for monitoring by WisLAP.

Post-report Proceedings in this Court

---

[20] The OLR subsequently filed a statement of costs indicating that the costs of the proceeding until that time had been $2,343.82. The referee then filed a supplemental report again recommending that Attorney Bryant be required to pay the full costs of the proceeding.

¶40 Within a week after the referee filed her report in this matter, the OLR received a letter from one of Attorney Bryant's health care providers. The provider stated that he was writing at the request of and with the permission of Attorney Bryant. The letter described health issues which were then affecting Attorney Bryant and which had led to symptoms that included problems with memory, concentration, and the ability to make decisions. The letter further stated that due to those health issues, Attorney Bryant was unable at that time to respond to complaints that had been filed with the OLR. It requested that the OLR temporarily suspend all administrative proceedings involving Attorney Bryant.

¶41 Although the referee had expressed concern about the reasons for Attorney Bryant's misconduct and whether any underlying problems had been resolved, there is no indication that the OLR provided a copy of the letter to the referee in this matter. The OLR also did not file a copy of the letter in this proceeding. It did file a copy of the letter in a miscellaneous court file in which the OLR was seeking a temporary suspension due to Attorney Bryant's failure to cooperate with other grievance investigations.

¶42 As a result of the contents of this letter, this court subsequently issued an order on May 24, 2013, requiring responses from both Attorney Bryant and the OLR. The court's order asked the parties to provide an update on the status of Attorney Bryant's health, to discuss whether he was currently able to participate in disciplinary investigations and

22

proceedings, whether his health problems had any impact on his ability to make a knowing and voluntary decision to enter into the stipulation in this case, and whether he had a basis or a desire to assert in this case that the sanction for any misconduct found in this case should be mitigated because of health problems during the time of the misconduct.

¶43 Attorney Bryant's substantive response to the court's order stated that his health had improved over the preceding several months and that he was now able to participate in all disciplinary investigations and proceedings. The response further stated that while his health problems had affected the energy and commitment with which he had dealt with the proceedings before the referee, his decision to enter into the stipulation and waive certain rights had been made knowingly, intelligently and voluntarily. Finally, the response asserted that while his health problems had been a contributing factor in his failures to perform diligently and competently in the cases at issue in this proceeding, he did not wish to argue in this proceeding that his misconduct had been caused by his health problems. He stated that he continued to stand by the stipulated request for a four-month suspension of his license to practice law in Wisconsin.

Discussion and Decision

¶44 When we review a referee's report and recommendation in an attorney disciplinary proceeding, we affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo

23

basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶45 In light of Attorney Bryant's stipulation, we accept the referee's findings of fact based on the OLR's complaint. We further agree with the referee that those findings support the legal conclusion that Attorney Bryant committed the ethical violations alleged in each of the 15 counts of the OLR's complaint.

¶46 Turning to the issue of sanction, we determine that a four-month suspension is an appropriate level of discipline to impose in light of the facts of this case. Given the presence of prior discipline, the number of counts of misconduct, the number of clients impacted by the misconduct, and the seriousness of the misconduct, a suspension is clearly required. Recognizing that each case is unique in its facts, a four-month suspension here is supported by the cases cited by the OLR in its sanction memorandum to the referee. See In re Disciplinary Proceedings Against Hammis, 2011 WI 3, 331 Wis. 2d 19, 793 N.W.2d 884; In re Disciplinary Proceedings Against Goldstein, 2004 WI 87, 273 Wis. 2d 517, 681 N.W.2d 891.

¶47 We also agree with the referee that Attorney Bryant should be ordered to pay restitution to V.F. and J.R. in the

24

amount of $1,500. Attorney Bryant has explicitly agreed that restitution in this amount is "due and owing."

¶48 We differ from the referee, however, with respect to her recommendation regarding the imposition of conditions on Attorney Bryant's reinstatement. We share the referee's concern that something appears to have changed in Attorney Bryant's practice of law that led him into running afoul of the Rules of Professional Conduct after years of properly practicing law. We were particularly concerned by the letter submitted by Attorney Bryant's health care provider which stated that in 2012 Attorney Bryant was incapable of participating in disciplinary proceedings or even responding to OLR's investigatory requests. Attorney Bryant through his counsel, however, has stated that his health has improved. The OLR, which has been continuing to deal with Attorney Bryant in another pending proceeding, has not advised this court that his health problems are still rendering him unable to make reasoned decisions or otherwise act with the judgment required of an attorney. Moreover, we note that Attorney Bryant has sought treatment for the problems that have afflicted him.

¶49 For all of these reasons, we do not think it necessary to require Attorney Bryant to submit to an extended monitoring program administered by WisLAP. In order to ensure that Attorney Bryant's health will be in a sufficient condition to allow him to resume the practice of law, however, we conclude that the reinstatement of his license to practice law in this state following his four-month suspension should be conditioned

25

upon him obtaining a satisfactory mental health evaluation and providing that evaluation to the OLR. In order to be satisfactory, the evaluator must render an opinion, to a reasonable degree of professional certainty, that Attorney Bryant is presently capable of discharging the duties of a person licensed to practice law in this state. We further conclude that as an additional condition of reinstatement, Attorney Bryant must execute medical releases that authorize the OLR for a period of three years to review his medical and mental health records and to speak with his medical or mental health care providers. Once Attorney Bryant has complied with these conditions and the other conditions that are always required for reinstatement after a disciplinary suspension of less than six months, his license to practice law in this state can be reinstated.

¶50 Finally, we turn to the issue of the costs of this proceeding. Attorney Bryant has not objected to the statement of costs submitted by the OLR. Because there are no factors present in this case that would lead us to deviate from our general policy of imposing all costs on an attorney who has been found to have committed professional misconduct, we require Attorney Bryant to pay the full costs of this proceeding.

¶51 IT IS ORDERED that the license of Andrew J. Bryant to practice law in Wisconsin is suspended for a period of four months, effective the date of this order.

¶52 IT IS FURTHER ORDERED that, as a condition of the reinstatement of his license to practice law in Wisconsin,

26

Andrew J. Bryant shall take the following actions: (1) obtain a satisfactory mental health evaluation, at his own expense, in which the evaluator states, to a reasonable degree of professional certainty, that Andrew J. Bryant is presently capable of discharging the duties of a person licensed to practice law in this state; (2) provide a copy of that evaluation to the Office of Lawyer Regulation; and (3) execute medical record releases that authorize the Office of Lawyer Regulation for a period of three years to review his medical and mental health records and to speak with medical or mental health care providers.

¶53 IT IS FURTHER ORDERED that within 60 days of the date of this order, Andrew J. Bryant shall pay restitution in the amount of $1,500 to V.F. and J.R.

¶54 IT IS FURTHER ORDERED that within 60 days of the date of this order, Andrew J. Bryant shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶55 IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶56 IT IS FURTHER ORDERED that Andrew J. Bryant shall continue compliance with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶57 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

27

¶58 PATIENCE DRAKE ROGGENSACK, J. *(concurring)*. While I concur in the court's decision, I write separately because I would not require as a condition of reinstatement that Attorney Bryant execute medical releases that authorize the OLR for a period of three years to review his medical, including mental health, records or to speak with his medical or mental health care providers.